IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                Case Nos.:        4:13cr107/RH/CAS
                                                    4:16cv629/RH/CAS

ROBERT EDWARDS,
      Defendant.

_____

## Order, REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Motion to Vacate,
Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.   (ECF No.
69).   The Government has filed a response (ECF No. 75) and Defendant
filed a reply.   (ECF No. 79).   Defendant also filed a motion requesting an
evidentiary hearing and request for appointment of counsel.   (ECF No. 80).
The case was referred to the undersigned for the issuance of all preliminary
orders and any recommendations to the district court regarding dispositive
matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C.
§ 636(b) and Fed. R. Civ. P. 72(b).   After a careful review of the record
and the arguments presented, it is the opinion of the undersigned that
Defendant has not raised any issue requiring an evidentiary hearing and

that the § 2255 motion should be denied.    *See* Rules Governing Section 2255 Cases 8(a) and (b).

## BACKGROUND

On December 17, 2013, Defendant Robert Edwards was charged in a three count indictment with being a convicted felon in possession of a firearm, possession of a stolen firearm, and knowingly possessing an unregistered short-barreled shotgun.    (ECF No. 1).    The Office of the Federal Public Defender, which was originally appointed to represent him, had to withdraw due to a conflict and Mutaqee Naim Akbar took over the case.    (ECF Nos. 14-16, 20).

Defendant was arrested as a result of a joint investigation between the Leon County Sheriff's Office and the Bureau of Alcohol, Tobacco and Firearms.[1]    An informant purchased narcotics from Defendant, following which law enforcement, knowing Defendant's driver's license was suspended, conducted a traffic stop.    Law enforcement discovered eight oxycodone pills on Defendant's person, and a search of the vehicle

---

[1] The facts are taken from the description of the offense conduct in the Presentence Investigation Report ("PSR") to which there was no objection.    (ECF No. 44 at ¶¶ 8-12). *United States v. Patterson*, 595 F.3d 1324, 1326 (11th Cir. 2010) (defendant admits for sentencing purposes, the facts in the PSR to which he does not object).

revealed two loaded firearms within the reach of the driver of the car.   An

AR-15 rifle was located in the trunk.   Each of the firearms had been

reported stolen.   Defendant and the other occupant, his then live-in

girlfriend Deana Sutton,[2] were transported to the Leon County Sheriff's

Office for an interview.   During the interview, Sutton advised that

Defendant had additional firearms in the bedroom of their residence.   She

signed a consent to search and accompanied law enforcement to the

residence where they recovered 11 additional firearms, all but three of

which had been reported stolen.

After a two-day jury trial at which Defendant did not testify or present

any evidence, the jury unanimously found Defendant guilty on all counts.

(ECF No. 39).

A Presentence Investigation Report ("PSR") was prepared prior to

sentencing.   The final PSR reflected a total offense level of 30 and a

criminal history category of VI, which yielded an advisory guidelines range

---

[2] Defendant now disputes this characterization of Ms. Sutton, asserting that they ended their relationship in February of 2013 and were not living together at the Warsaw street address.   (ECF No. 79 at 16).   He acknowledged, at sentencing, that he had read the PSR.   (ECF No. 60 at 2).   Neither Defendant nor counsel addressed any factual inaccuracies in the report.

of 168 to 210 months.   (ECF No. 44, ECF No. 60 at 12).[3]   The total

offense level included the base offense level of 20, a four-level adjustment

for the number of weapons involved in the offense conduct, a two-level

increase because at least one of the firearms was stolen, and a four-level

increase because several firearms were possessed in connection with

Defendant's possession of oxycodone.   (ECF. No. 44, PSR ¶¶ 19-21).

At sentencing, the court overruled the lone defense objection, which

was to the adjustment for possession of the weapons in conjunction with

the oxydocone.   (ECF No. 60 at 3-4).   Defendant read a statement in

which he emphasized the changes he had made in his life and mentioned

that counsel might have filed a motion to suppress if he had to "do it all

over again."   (ECF No. 60 at 11).   The court sentenced Defendant to the

statutory maximum and the amended guidelines range of 120 months'

imprisonment on each count to run concurrently.   (ECF Nos. 47, 48, 60).

---

[3] The PSR reflected a guidelines range of 96 to 121, which the court noted at
sentencing was incorrect.   However, because of the ten-year statutory maximum the
guideline range became 120 months.   (ECF No. 60 at 12).

Case Nos.: 4:13cr107/RH/CAS; 4:16cv629/RH/CAS

Defendant appealed, challenging the prosecutor's use of a peremptory strike as to a single juror during voir dire.   (ECF No. 64).   The Eleventh Circuit affirmed.

Defendant timely filed the instant motion to vacate raising two grounds for relief.   He contends that counsel was constitutionally ineffective because he failed to perfect and file a motion to suppress evidence, and that counsel failed to object to certain hearsay testimony by law enforcement at trial and to call as a witness the individual whose statements were the subject of said hearsay.   The Government opposes the motion.

## ANALYSIS

### General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).   Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3)

exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   *Nyhuis*, 211 F.3d at

1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at

622 (citations omitted).   To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn*, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).

In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two

prongs.   *Strickland*, 466 U.S. at 697; *Holladay v. Haley*, 209 F.3d 1243,

1248 (11th Cir. 2000) ("[T]he court need not address the performance

prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court

must, with much deference, consider "whether counsel's assistance was

reasonable considering all the circumstances."   *Strickland*, 466 U.S. at

688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th

Cir. 2007).   Reviewing courts are to examine counsel's performance in a

highly deferential manner and "must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional

assistance."   *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009)

(quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*,

218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of

reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d

362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to

error-free representation").   Counsel's performance must be evaluated

with a high degree of deference and without the distorting effects of

hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance

was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70

(1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.   *Glover v. United States*, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).   Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Denson v. United States*,

804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (holding that failure to preserve meritless *Batson* claim is not ineffective assistance of counsel).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit

has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d

1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims,

conclusory allegations unsupported by specifics, or contentions that are

wholly unsupported by the record.    *See Winthrop–Redin v. United States*,

767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need

not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon

unsupported generalizations") (internal quotation marks omitted); *Peoples

v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that

amount to nothing more than conclusory allegations do not warrant a

hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal

issues can be resolved by the court without a hearing.

### Ground One

Defendant's first claim for relief is that counsel was constitutionally

ineffective when he failed to investigate and then perfect and file a motion

to suppress.

Defendant was stopped by law enforcement on July 17, 2013, driving

a 2001 BMW that he was in the process of purchasing which bore

temporary tags.    Deana Sutton was a passenger in the vehicle.

Defendant admits that he knew at the time that his Florida driver's license

had been suspended.    (ECF No. 69 at 5).    During a pat-down search, law

Case Nos.: 4:13cr107/RH/CAS; 4:16cv629/RH/CAS

enforcement discovered some prescription narcotic pills, oxycodone, on Defendant's person.   After smelling the odor of marijuana in the car, law enforcement searched the passenger compartment of the BMW and discovered two handguns.   Defendant and Sutton were transported to a police facility, and a later, more thorough search uncovered an AR-15 rifle in the trunk.

During his detention, Defendant learned that law enforcement had searched his mother's home, where he was residing, and discovered eleven other firearms, including a short-barreled shotgun.   Defendant was arrested and jailed on state narcotics and firearms charges until he was released on bond in August of 2013.   Sutton was released immediately with no charges filed against her.

Defendant states that before he was released on bond, Sutton came to visit him and told him that police had threatened her with arrest and the potential loss of her parental rights unless she cooperated with them. Sutton allegedly told Defendant that she told police about firearms she had seen at Defendant's mother's home, and was "coerced" into accompanying law enforcement to the home because of those threats.   Once there, Sutton told Defendant that police had her sign an official "consent to

search" form, and she let officers in the unlocked front door and showed him the room where the firearms were located.   (ECF No. 69 at 6-7).

Defendant now explains that he moved into his mother's home in or around February of 2013, after his romantic relationship with Sutton ended. He emphasizes that his mother was the registered lease holder, and that although Sutton had visited several times, she never resided there, received mail there, kept personal property there, or used the address as her official address, and she did not have a key.

Defendant reports that he questioned the legality of the search during his first meeting with appointed counsel Mutaqee Akbar.   Mr. Akbar purportedly told him that the search was legal because Sutton had signed the consent form.   Defendant objected to this conclusion, telling counsel that Sutton had been threatened and coerced, and that she did not have the right to authorize consent to a search. (ECF No. 8).   Defendant contends he asked Mr. Akbar to talk to Defendant's mother, and two additional witnesses who could have testified that only his mother and he resided at the home.   He said that counsel neither talked to Sutton or any of the suggested witnesses nor filed a motion to suppress, and that had he

done so, there is a reasonable probability that the motion would have been successful.

When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, to demonstrate actual prejudice, Defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251-52 (11th Cir. 2010).   Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded.  *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000); *Huynh v. King*, 95 F.3d 1052, 1058–59 (11th Cir. 1996); *Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987); see also *Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005).

This case is somewhat unusual in that inculpatory evidence was recovered from two locations.   Irrespective of the recovery of the firearms at Defendant's residence, the three weapons discovered in his car supported a guilty verdict on Counts One and Two of the Indictment,

because both of the firearms seized from the vehicle had been reported stolen.   (ECF No. 44, PSR ¶ 11).   The weapon that was the subject of Count Three was recovered from Defendant's house, and had it been suppressed, there would have been no conviction on Count Three. However, because the court imposed concurrent rather than consecutive terms of imprisonment on the three counts, a conviction of two rather than three of the charges would have had no practical effect.

Additionally, the guidelines calculations, specifically the four-level adjustment for the number of weapons involved in the offense conduct (ECF No. 44, PSR ¶ 19), would not have been affected by a successful motion to suppress.   The Eleventh Circuit has held that even where a Fourth Amendment violation has occurred, the exclusionary remedy does not apply to the sentencing phase or to the court's calculation of a defendant's guidelines range.   *United States v. Lynch*, 934 F.2d 1226, 1234–37 (11th Cir.1991); *see also United States v. Jackson*, 713 F. App'x 963, 968 (11th Cir. 2017) (citing *Lynch*).   Thus, evidence that has been suppressed may still be used to calculate a defendant's guidelines offense level and sentence.   *Lynch*, 934 F. 2d at 1236–37.   This rule has implications for the prejudice prong of ineffective assistance claims brought

Case Nos.: 4:13cr107/RH/CAS; 4:16cv629/RH/CAS

under *Kimmelman*, because if there is sufficient non-excludable evidence to sustain a defendant's conviction, he does not establish prejudice merely because excludable evidence was used to enhance his advisory guidelines sentence.   *See United States v. Cox*, 59 F. App'x 437, 439 (2d Cir. 2003).

It also appears that, based on the evidence adduced at trial, officers had an objectively reasonable good faith belief that Sutton's consent to search the premises was valid, even if, as Defendant now claims, Sutton did not have actual authority to consent to a search of the premises.   (*See* ECF No. 75 at 6-8).

Finally, the court notes that although the Government did not submit an affidavit from former defense counsel, counsel did comment on the suppression issue at trial.   In discussing closing arguments, the district court warned the parties that they could not bypass the court on the suppression issue and argue the exclusion issue to the jury.   The court stated: "So the jury doesn't get to decide that the defense wins this case because they shouldn't have searched that house."   (ECF No. 58 at 273). Defense counsel admitted that he did not think he "could legitimately argue that law enforcement didn't have at least apparent authority to search the house, based off the representations made by Ms. Sutton."   (*Id.* at 273).

Case Nos.: 4:13cr107/RH/CAS; 4:16cv629/RH/CAS

The court admonished that counsel could not suggest there was anything improper about searching the room they searched, and even responded to a subsequent jury question about the search by stating that the search of the bedroom at Warwick Drive was legal.   (ECF No. 59 at 350).

For all of the foregoing reasons, no relief is warranted on this claim.

<u>Ground Two</u>

Ground two contains two subparts.   Defendant first contends that counsel was constitutionally ineffective when he failed to object to hearsay testimony from law enforcement about statements allegedly made by Ms. Sutton.   He withdrew this portion of the claim in his reply memorandum, noting that his initial representation had been made without the benefit of having reviewed the trial transcript.   (*See* ECF No. 79 at 9).

Defendant also contends that counsel was constitutionally ineffective for failing to call Sutton as a witness at trial to rebut the statements attributed to her by law enforcement about her residing in the house, and the validity of her consent to search.   Defendant claims that the jury's question regarding whether the search of his mother's home was a legal search proves that he was prejudiced by counsel's omissions in this regard. (ECF No. 69 at 11).

The Government faults Defendant for not producing an affidavit from Sutton about what her testimony might have been.   (ECF No. 75 at 12-13). In turn, Defendant maintains that he has set forth the information provided to him by Sutton on numerous occasions and he "has every reason to believe" that these are the same facts that she would have testified to, if counsel had called her as a witness at trial.   He has submitted his own affidavit in which he attests to the information Sutton allegedly gave him at the time, and explains that he has been unable to contact Sutton due to his incarceration.   (ECF No. 79 at 14-16).

Defendant asserts that Sutton would have provided testimony that would have cast the law enforcement officers involved in this case in a very bad light.   (ECF No. 79 at 10).   He claims that Sutton would have testified that police threatened and coerced her into signing what was a "worthless" consent to search form, and that her testimony would have shown that law enforcement testified falsely at trial regarding their encounter with her. (ECF No. 79 at 10).   He surmises that had the jury heard Sutton's testimony there "is simply no way to properly gauge what the jury in this case may have done" and that "jury nullification would not be out of the question."   (ECF No. 79 at 11).   Speculation about jury nullification,

particularly in light of the other evidence against him, does not meet Defendant's burden of proving that he was prejudiced by the fact that Sutton was not called as a defense witness at trial.

Sutton's testimony, as proffered by Defendant, would have directly conflicted with the testimony of Leon County Sheriff's Investigator Poole, who denied that he tried in any way to force or coerce Sutton to sign the consent to search form.   (ECF No. 58 at 75).   Poole also testified that Sutton told law enforcement she had been living at the residence with Defendant and that the firearms were in her bedroom.   (ECF No. 58 at 74, 99).   Finally, Poole testified that law enforcement found Sutton to be a credible witness because the firearms were where she said that they would be, and Poole had overhead Defendant admit during his interviews with law enforcement that weapons would be found in the residence, and he had made comments to investigators about where he obtained the weapons. (ECF No. 58 at 100).

In addition, although the undersigned does not have access to the actual recordings that were introduced as evidence at trial, there was evidence at trial that law enforcement recorded incriminating portions of Defendant's conversations with them that appear to contradict the position

he now takes.   For instance, he asked law enforcement whether it was his girlfriend who led them to the guns and that she gave law enforcement permission to enter the bedroom to get them.   (ECF No. 58 at 21).

Sergeant Bobby Green testified that Sutton accompanied law enforcement to the house, past two or three people who were sitting on the porch, and into the bedroom where the weapons were found.   (ECF No. 58 at 136-38, 141, 181).   There was no indication from his testimony that any of these people objected to Sutton entering the home with the two officers. Green and Detective Morris searched only one bedroom of the three-bedroom house, because they did not have permission to search any other parts of the house.   (ECF No. 58 at 143).   They also did not search under the bed or mattress or the dressers as they would have with a search warrant.   (ECF No. 58 at 175).   Defendant admitted to Green that there were several guns inside the house.   (ECF No. 58 at 148-49).

Detective Jennifer Morris of the Leon County Sheriff's Office authenticated recordings of law enforcement's interviews with Defendant before they were published to the jury.   (ECF No. 58 at 202-206).   She also testified that there were people on the porch at the time she and Sergeant Green entered the residence and that their search was limited to

Case Nos.: 4:13cr107/RH/CAS; 4:16cv629/RH/CAS

the single bedroom from which the weapons and ammunition were recovered.   (ECF No. 58 at 216).   There was nothing in her testimony to suggest that Sutton was coerced to signing the consent to search or that law enforcement had any doubt of her authority to do so.

Special Agent Taji Muttalib from the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that Defendant admitted knowing the firearms in the car were stolen (ECF No. 58 at 227).

After reviewing the evidence adduced at trial, including the incriminating evidence seized from the vehicle and Defendant's tape-recorded statements to law enforcement, the court cannot say that the results of the proceeding would have been different if Sutton had been called as a witness at trial.   As discussed above, even if the jury had found her testimony more credible than that of the law enforcement officers, and as a result disregarded or discounted the evidence seized from Defendant's residence, the evidence unquestionably showed Defendant's guilt of Counts One and Two of the indictment beyond a reasonable doubt. Again, Defendant's speculation about jury nullification does not meet his burden of proving that counsel's performance was constitutionally deficient.

Case Nos.: 4:13cr107/RH/CAS; 4:16cv629/RH/CAS

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore, Defendant's motion should be denied in its entirety.


CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation

omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 69) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

And it is **ORDERED:**

Defendant's motion for an evidentiary hearing and appointment of counsel (ECF No. 80) is **DENIED** as moot.

At Tallahassee, Florida, this 3d day of May, 2018.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


Case Nos.: 4:13cr107/RH/CAS; 4:16cv629/RH/CAS

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.